Entered on Docket
August 19, 2008

_____
Hon. Bruce A. Markell
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re:<br><br>JOSEPH H. ROSSANA, and JO ANN ROSSANA,<br><br>   Debtors.<br>_____<br><br>JOSEPH H. ROSSANA, and JO ANN ROSSANA,<br><br>   Plaintiffs,<br><br>v.<br><br>JOHN JOSEPH MOMOT,<br><br>   Defendant.<br>_____ | BK-S-92-25221-BAM<br><br>Chapter 7<br><br>Adv. Pro. No. 99-2128-BAM<br><br>**OPINION SANCTIONING NEIL J. BELLER AND REFERRING MATTER TO NEVADA OFFICE OF BAR COUNSEL**<br><br>Date: February 5, 2008<br>Time: 9:30 a.m.<br>Place: Courtroom 3 |

**I. Introduction**

Representing John Momot (Momot), attorney Neil Beller (Beller) moved to set aside a judgment. This was problematic because Beller represents the holders of the judgment, and represented them in execution proceedings on that judgment against Momot. This opinion deals with the consequences of this dual representation.

**II. Facts**

This matter began with the sale of a bar more than twenty years ago. In 1987, Momot sued Joseph Smith and Smith's brother-in-law, Joseph Rossana (Joe), in Nevada state court. Momot contended that he was entitled to a share of the proceeds of the sale of the Rum Runner Tavern;

Smith and Joe disagreed. Beller represented Joe.

Momot ultimately won, and obtained a judgment of $225,779. He sought to execute on Joe's property to satisfy that judgment. Joe responded to these collection efforts in ways that were neither mild nor legal. In 1994, he was convicted of aggravated stalking of Momot, of malicious destruction of Momot's property, and of discharging a firearm from a motor vehicle at Momot's home. Although some of the convictions were later overturned, he served two years in prison for these crimes. Beller represented Joe in the criminal case as well.

While this activity was sorting itself out, Joe and his wife, Jo Ann Rossana (Jo Ann), filed bankruptcy. Beller was substituted as counsel for both Jo Ann and Joe (collectively, the Rossanas[1]) in their bankruptcy in 1994. On May 7, 1999, on behalf of the Rossanas, Beller filed a complaint against Momot in bankruptcy court, alleging that Momot had executed on too much property when collecting on the $225,779 judgment. After trial (of which more later), the bankruptcy court agreed. On September 11, 2003, the court entered judgment in the approximate amount of $28,559 against Momot. In December of 2003, Beller garnished Momot's bank account to collect this amount. Some time after the garnishment, Joe and Jo Ann divorced. Joe later died.

There were irregularities in Momot's defense of the adversary proceeding. Momot's then-attorney testified in this proceeding that even though he entered an appearance and filed an answer for Momot, he failed to tell Momot that the adversary proceeding had started. He testified further that he did not inform Momot about the trial or that a judgment had been entered against him. This sequence of events is even stranger than it sounds: Momot is an actively practicing lawyer.

---

[1] Although Joseph Rossana is deceased, this court uses "Rossanas" in the plural because Joseph Rossana's estate may have succeeded to his rights under the judgment and may have an interest in protecting those rights.
    There is some confusion in the spelling of the debtors in this case. On their petition and on their discharge, the names are Joseph Rossana and Jo Ann Rossana. The complaint in this adversary proceeding contains the same spellings. Beller, however, in his pleadings for Momot, subtracts an "s" and adds an "n" to their last names, *i.e.*, "Rosanna" instead of "Rossana", and spells Ms. Rossana's name "Joanne" instead of "Jo Ann." This opinion will use the names on the petition, the discharge and the complaint, and will ignore Beller's variations.

2

Momot testified that he first learned of the judgment when his bank account was garnished in 2003.  He also testified that in the fall of 2004, he and Beller had a chance meeting, and Momot commented on the execution against his bank account.  Beller and Momot both testified that at this chance encounter they discussed the trial and the fact that Momot had not attended.  Momot testified that he then asked if Beller could do anything to remove the judgment.  Momot testified that he was not specifically retaining Beller and that he was just discussing how to "administratively remove" the judgment.

Nothing further happened until October 29, 2007, approximately three years after the initial conversation between Beller and Momot.  On that date, Beller filed a "Motion for Relief From Judgment" on behalf of Momot in this court.  Although Momot testified that he did not recall reviewing the motion, Momot signed an affidavit included with it.  Further, Beller stated in another affidavit included with that motion that "[f]or the purposes of this Motion for Relief from Judgment, I am counsel of record for John Momot, Esq."  Later in the same affidavit, Beller made the statement "[a]s attorney for Plaintiffs/Debtors in the above entitled action."

Beller did not withdraw and has not withdrawn from his representation of the Rossanas. When asked whether he still represented the Rossanas, he replied that Joe was dead and that the matter was closed.  Beller testified further that he filed the motion for Momot as "a courtesy.  It is an accommodation from one lawyer to another."  When asked if he had contacted Jo Ann before filing the Motion for Relief From Judgment, he replied that he had not.  He did testify that he contacted her in December 2007, to which she replied in an email stating that she was out of town, that she wanted the case number, and that they could discuss it when she returned to Las Vegas. When asked why he did not contact her before he filed the motion, Beller said, "Other than the fact that, I mean, Joe [Joseph Rossana] was old-school, Italian.  I don't want to get . . . , but, but, she was always a behind-the-scenes person from the criminal matter to the bankruptcy matter.  She was just there, and . . . I didn't really think about it."

On December 20, 2007, this court issued its "Order to Show Cause Why Neil J. Beller

3

Should Not Be Sanctioned for Violating the Nevada Rules of Professional Conduct and Why This Matter Should Not be Referred to the State Bar of Nevada Office of Bar Counsel." An evidentiary hearing on the order to show cause was held on February 5, 2008, at which time Beller formally withdrew his motion for relief from judgment. At the hearing, Beller and Momot were both represented by counsel.[2] Beller argued that he no longer represented the Rossanas and owed no duty to them given the limited nature of his representation of Momot. Alternatively, he alleged that the Rossanas suffered no harm, or that any prejudice caused was so ephemeral that it did not constitute a violation of any of his duties as a lawyer.[3]

Beller's legal position turns on whether he still represented the Rossanas when he undertook Momot's representation. If he did, his conduct is assessed under Rule 1.7 of the *Nevada Rules of Professional Conduct*; if not, the applicable rule is Rule 1.9.[4] But first we need to decide if Beller still represented the Rossanas when he agreed to represent Momot.

Beller makes a strong case that his representation of the Rossanas was over. After the 2003 garnishment on Momot's bank account, there was apparently nothing more to do for the Rossanas,

---

[2] In its order to show cause, this court raised questions about whether the conduct of Momot, an attorney, also violated the *Nevada Rules of Professional Conduct*. *See* NEV. RULES PROF'L CONDUCT R. 8.4(a) (A lawyer may not "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.") The court does not decide that matter at this time. It also does not reserve exclusive jurisdiction over that issue for any future time; the Office of Bar Counsel of the State Bar of Nevada is free to pursue the matter if it decides to do so.

[3] Although Beller claims no prejudice, he did not secure from Momot any agreement not to take action against the Rossanas if Beller was successful in setting aside the judgment. This is important, because if the judgment had been set aside, the legal basis for the December 2003 garnishment would have been eliminated, and Momot could have conceivably sought to recover the funds garnished.

[4] Attorneys practicing before this court are required to adhere to the Local Rules of this court as well as to the *Model Rules of Professional Conduct* as may be amended and adopted by the Nevada Supreme Court. Local Rule IA 10-7. Rule 10-7, however, is subject to such modifications as the court may make. *Id*. As a result, and as permitted by Local Rule IA 10-7, the court will consider other relevant authorities, such as the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, the actual Model Rules and their related commentaries. *See also* Nancy Rapoport, *The Intractable Problem of Bankruptcy Ethics: Square Peg, Round Hole*, 30 HOFSTRA L. REV. 977 (2002); Nancy Rapoport, *Our House, Our Rules: the Need for a Uniform Code of Bankruptcy Ethics*, 6 AM. BANKR. INST. L. REV. 45 (1998).

and the adversary proceeding was administratively closed. His clients divorced, and one of them died.[5]

But Beller never filed a satisfaction of judgment (leaving open the possibility that there may be further collection activity), and administrative closure of a case has nothing to do with the parties' actions.[6] If Beller did not represent Jo Ann Rossana in the probate of her husband's estate, it was one of the few legal actions he did not perform for the Rossanas – he had previously represented them in a civil suit, a criminal matter, and a bankruptcy. He also has never withdrawn in this case as the Rossanas' counsel of record. As the attorney-client relationship is based on the subjective belief of the client, *In re* Lentek Int'l, Inc., 377 B.R. 396, 400 (Bankr. M.D. Fla. 2007), it was Beller's obligation to show, if he could, that his remaining client, Jo Ann Rossana, did not believe that Beller continued to represent her in this matter. He did not do so; indeed, his evidence, such as it is, shows that Jo Ann was unclear as to what Beller's continuing role was, and that she wanted further information before she would commit to any position.

### III. Does Beller Currently Represent the Rossanas?

Whether a lawyer-client relationship has ended is a question of fact. AM. BAR ASS'N, ANN. MODEL RULES PROF'L CONDUCT, ANNOTATIONS TO RULE 1.9 (2007). Normally, when the representation has achieved its aims, it is considered terminated. Damron v. Herzog, 67 F.3d 211, 213-14 (9th Cir. 1995). Application of this test, in turn, necessarily requires an examination of the scope of the representation. When, as here, the attorney represents the client generally in many matters over a long period of time, it may be reasonable to believe that the attorney-client relationship continues unabated even though discrete projects may have reached completion. *See* Oxford Sys., Inc. v. Cellpro, Inc., 45 F. Supp. 2d 1055, 1060-62 (W.D. Wash. 1999) (law firm that

---

[5] There is no evidence, one way or another, that Beller represented either Joe or Jo Ann in their divorce, or had any representation related to the probate of Joe's estate.

[6] Indeed, the court had closed the adversary proceeding before Beller obtained a writ of execution on Momot's bank account.

5

served as local counsel for corporation in patent litigation and other matters for thirteen years had ongoing client-lawyer relationship even though firm currently had no assignment; scope and duration of relationship made it reasonable for corporation to assume firm would continue to represent it if other matters arose); SWS Fin. Fund A v. Salomon Bros. Inc., 790 F. Supp. 1392, 1398 (N.D. Ill. 1992) (finding ongoing relationship requiring current-client analysis rather than former-client test when only two months had elapsed since completion of last billable project for client, and neither party had expressly terminated); Hatfield v. Seville Centrifugal Bronze, 732 N.E.2d 1077, 1081 (Ohio C.P. 2000) (when lawyer provides annual advice and services to client and takes no action to notify client formally that representation has ceased, lawyer is client's lawyer for following year for conflicts purposes). *But cf.* Artromick Int'l, Inc. v. Drustar, Inc., 134 F.R.D. 226, 231-32 (S.D. Ohio 1991) (relationship terminated and no disqualification; although lawyer's last bill was disputed and remained unpaid, lawyer had not performed services for client for more than one year and client was using new lawyer); PA. ETHICS OP. 2001-08 (2001) (law firm that performed corporate work for company for two years and then no further work for two years may represent company's opponent in unrelated matter, unless facts indicate company reasonably believes it is still current client). Here, the long list of diverse matters on which Beller represented the Rossanas could reasonably be seen as an undertaking of general and continuing representation, at least as to the matters actually taken on. While this position could have easily and convincingly been rebutted by a simple disclaimer in Beller's retention agreement, no such agreement was offered in evidence.

There may be other grounds to find that the representation here continued. When an attorney whose representation has terminated later "interpose[s] himself into a matter substantially related to that for which he was previously retained . . . [he] create[s] a situation in which the attorney-client relationship re-attaches." *Damron*, 67 F.3d at 213.

The facts here are similar to those in *Damron*. There, a lawyer had drafted a sale agreement for some sellers of a business. About nine years later, the purchasers of the business sought advice

6

from the *seller's* attorney. During the interim, the attorney who had drafted the agreement had not done any further work for the sellers with respect to the agreement (although he had represented them on unrelated miscellaneous matters). Nonetheless, the attorney advised the purchasers to stop paying the sellers under the terms of the agreement that he had drafted for the sellers. The sellers then sued the attorney for breach of the duty of loyalty. The attorney defended on the basis that he no longer represented the sellers, and hadn't for a very long time. The Ninth Circuit, interpreting Idaho law, summed up the attorney's untenable position as follows:

> We find it nonsensical to hold that the attorney-client relationship does not remain intact with respect to matters substantially-related to the initial matter of the engagement. Such a result is contrary to the basic tenets of attorney-client relationships.

*Damron*, 67 F.3d at 214. The court found that the continuation of the relationship was not "a drastic extension" of the common law, but "a natural complement to the law as defined by . . . courts." *Id.*

Here, if the pervasive scope of matters Beller undertook for the Rossanas did not keep open his representation, he clearly reopened it under *Damron* when he sought to set aside the fruits of the earlier lawsuit – the judgment representing the overpayments his clients had made to Momot – on behalf of Momot. The court cannot imagine a matter than is more substantially related to the original engagement. As a result, Beller represented both the Rossanas and Momot – the plaintiff and defendant – in the same lawsuit.

### IV. Conflict With Current Client

Not surprisingly, Nevada law does not countenance this type of joint representation. The Nevada Rules provide that an attorney may not represent a client whose interests are directly adverse to the interests of another client. Rule 1.7(a) provides in relevant part that:

> Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) The representation of a client will be directly adverse to another client.

RULE 1.7(a), NEV. RULES PROF'L CONDUCT. As the *Restatement* makes clear, this rule is intended

to "assure clients that their lawyers will represent them with undivided loyalty," and that "[a] client is entitled to be represented by a lawyer whom the client can trust." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 121 cmt. b. (2000).

As established above, Beller continues to represent the Rossanas. Although the attorney-client relationship between Beller and Momot is not as extensive as that between Beller and the Rossanas, the facts, including Beller's own affidavit, make clear that Beller was acting as Momot's attorney. Beller's testimony seems to be that Beller gratuitously made the motion to vacate on behalf of Momot and that there was no formal retention agreement. The attorney-client relationship is typically a contractual one based on the payment of fees in exchange for services, but this is not a condition precedent for a finding that an attorney-client relationship existed. Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311, 1317 (7th Cir. 1978); AM. BAR ASS'N, ANN. MODEL RULES PROF'L CONDUCT, ANNOTATIONS TO RULE 1.9 (2007). In addition, gratuitously performed legal services are sufficient to support a finding that an attorney-client relationship existed. Williams v. Waldman, 108 Nev. 466, 471, 836 P.2d 614, 617-18 (1992) (finding an attorney-client relationship where the attorney-husband drafted the divorce agreement). *See also* MGIC Indemnity Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

As a consequence, despite the apparent lack of fees paid or a retention agreement, Momot was Beller's client. Beller had agreed to take steps to relieve Momot of the judgment and appeared on his behalf, creating an attorney-client relationship between them. Direct adversity is apparent on the facts of this case, and Beller has not shown the court any facts to the contrary. It is undisputed that Beller obtained a judgment against Momot on behalf of the Rossanas. It is likewise undisputed that Beller appeared on behalf of Momot and filed a motion for relief from the same judgment that he had obtained on behalf of the Rossanas. Indeed, when compared to cases in which courts have disqualified attorneys from representing a client because of direct adversity, it is obvious that the representation of Momot for the purpose of obtaining relief from the judgment

8

against the Rossanas was directly adverse.[7] Further, the prohibition on Beller's conduct is so basic that this court is at a loss to find cases that deal directly with conduct so obviously adverse. Instead, the court is left to examine cases in which direct adversity was found, but in which the adversity was not so direct as to involve appearing as counsel of record for parties on both sides of the case. *Cf. Westinghouse*, 580 F.2d at 1318-22; *In re* Advisory Opinion of Kentucky Bar Ass'n, 847 S.W.2d 723 (Ky. 1993); Baldasarre v. Butler, 132 N.J. 278, 295-96, 625 A.2d 458, 467 (1993).

Beller argues that despite the adversity, his motion on behalf of Momot would not have prejudiced the Rossanas. As an initial matter, Beller has cited no authority that the relief he sought on Momot's behalf would not adversely affect the Rossanas or subject their collection on the judgment to collateral attack. In addition, Beller misapprehends the purpose of the rules against conflict of interest. They are designed to protect clients as well as to serve as a basis for sanctions. Although sanctions may follow a violation of the rule that causes harm to a client, actual harm is not a condition precedent for finding that an attorney had a prohibited conflict of interest. *See* Cincinnati Ins. Co. v. Wills, 717 N.E.2d 151, 179-80 (Ind. 1999), Healy v. Axelrod Const. Co. Defined Ben. Pension Plan and Trust, 155 F.R.D. 615, 620 (N.D. Ill. 1994). Finally, as a factual matter, Beller failed to establish this proposition. He never bothered to communicate with Jo Ann before he filed the motion for relief on behalf of Momot, and apparently has never followed up on the one contact he made after the court questioned him about communications with the Rossanas. He never thought of securing from Momot any agreement or undertaking that, if successful, Momot would not use the lack of a judgment to set aside the garnishment. In short, all his talk about a lack of prejudice is nothing more than "the breath of an unfee'd lawyer." WILLIAM SHAKESPEARE, KING LEAR, act 1, sc. iv.

### V. Conflict With Former Client

To the extent that the Rossanas were no longer clients of Beller, he owed a continuing duty of

---

[7]This court takes no position on whether Beller could have represented Momot in a matter entirely separate from this adversary proceeding.

9

loyalty to them as his former clients. Rule 1.9(a) of the NEV. RULES PROF'L CONDUCT provides in relevant part that:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

NEV. RULES PROF'L CONDUCT R. 1.9(a). Beller admitted that he did not obtain consent, informed or otherwise, in writing from Jo Ann or from the estate of Joe. Accordingly, the only questions before the court are whether his representation of Momot was materially adverse to the Rossanas, and whether it was substantially related to his prior representation of the Rossanas.

The duties to the former client arise only if the proposed representation is in the same or a substantially related matter as the one in which the attorney previously represented the former client. Here, it is not only substantially related, it is identical. It is undisputed that Beller represented the Rossanas against Momot in this case and that Beller later appeared on behalf of Momot in the same case. The court finds that because Beller's representation of both parties occurred in a single case, that it was to obtain relief for Momot on the Rossanas' judgment in that case, and that neither party was ever dismissed or withdrew as a party to the case, then it is beyond doubt that this meets the same case requirement to trigger NEV. RULES PROF'L CONDUCT R. 1.9(a).

If there is any question that this is the same case, the court also finds that the matter in which Beller represented the Rossanas was substantially related to the matter in which he represented Momot. The *Restatement* expresses the concerns regarding a conflict of interest between a current client and a former client, stating:

> The rule . . . accommodates four policies. First, absent the rule, a lawyer's incentive to serve a present client might cause the lawyer to compromise the lawyer's continuing duties to the former client (*see* § 33). Specifically, the lawyer might use confidential information of the former client contrary to that client's interests and in violation of § 60. The second policy consideration is the converse of the first. The lawyer's obligations to the former client might constrain the lawyer in representing the present client effectively, for example, by limiting the questions the lawyer could ask the former client in testimony. Third, at the time the lawyer represented the former client, the lawyer should have no incentive to lay the basis for subsequent representation against that client. Fourth, and pointing the other

way, because much law practice is transactional, clients often retain lawyers for service only on specific cases or issues. A rule that would transform each engagement into a lifetime commitment would make lawyers reluctant to take new, relatively modest matters.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERING § 132 cmt. b (2000). Accordingly, Beller's representation of the Rossanas and the later representation of Momot raises serious questions as to how Beller allocated his duties of confidentiality and diligence.

This court previously addressed the issue of substantial relationship under NEV. RULES PROF'L CONDUCT R. 1.9 in North Am. Deed Co., Inc. v. Joseph (*In re* North Am. Deed Co.), 334 B.R. 443, 447-52 (Bankr. D. Nev. 2005) (applying Waid v. Eighth Judicial District Court, 119 P.3d 1219 (Nev. 2005)). In *North American Deed*, this court applied the three-part test from *Waid* that requires a court reviewing an attorney's potential client conflict with a former to:

> (1) make a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether that information is relevant to the issues raised in the present ligation.

*Waid*, 119 P.3d at 1223. The application of these factors must show more than a "superficial similarity between the two matters" and must be focused on the "precise relationship between the present and former representation." *Id*. Even with the requirement of a precise relationship, it is absolutely clear that there is a substantial relationship between Beller's former representation of the Rossanas and his later representation of Momot.

The second part of the *Waid* test requires that the court determine if confidential information was shared from the earlier representation. *Id*.; Robbins v. Gillock, 109 Nev. 1015, 1017-18, 862 P.2d 1195, 1197 (Nev. 1993). The court in *Robbins* stated that the inquiry was not whether the attorney actually received confidential information, but whether the attorney potentially acquired confidential information that would be harmful to the previous client in the current matter. *Id*. As the scope of the former representation and the current representation are identical, it is without doubt that Beller acquired information that was potentially harmful to the Rossanas in the current matter. This is of even greater concern because Beller's representation of Joe individually goes

11

back to the criminal charges brought against Joe involving Momot. This creates a substantial risk that Beller was in possession of confidential information learned in this adversary proceeding and in a prior related criminal proceeding.

Finally, the court must determine whether the confidential information is relevant to the present matter. The *Restatement* holds that there is relevance where there is "substantial risk that the subsequent representation will involve the use of confidential information of the former client obtained in the course of representation." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERING § 132 cmt. d(iii) (2000), and see *In re* North Am. Deed Co., 334 B.R. at 450-51. Both Rules 1.9 and 1.7 of the NEV. RULES PROF'L CONDUCT are prophylactic rules whose purpose is not simply to punish a lawyer who does share former client confidences or does injure a former client. The purpose of Rule 1.9 of the NEV. RULES PROF'L CONDUCT is also to prevent a representation in which former client confidences could be shared or a former client injured. The prophylactic nature of the rule discredits Beller's arguments that no client confidences were shared and that the Rossanas would not have been adversely affected.

### VI. Conclusion

This court finds that Neil Beller violated the *Nevada Rules of Professional Conduct*, applicable in this proceeding by virtue of the local rules of this court. Specifically, Beller simultaneously represented the interests of two clients who were adverse parties in the same litigation. This is a violation of the prohibition of concurrent representation of adverse parties found in NEV. RULES PROF'L CONDUCT R. 1.7. Further, and to the extent that the Rossanas were Beller's former clients instead of current clients, Beller violated NEV. RULES PROF'L CONDUCT R. 1.9 by failing to obtain the informed consent of the Rossanas before undertaking his representation of Momot in the same or substantially related matter.

The court finds that this is an egregious violation of the Nevada Rules of Professional Conduct that fall outside all accepted norms of the legal profession. Indeed, Beller's conduct discredits the work of all attorneys before this court and in the state of Nevada by calling into question whether

attorneys will faithfully and loyally serve the interests of their clients.

By this published opinion, Neil Beller is HEREBY PUBLICLY REPRIMANDED for his simultaneous representation of the Rossanas and Momot. Further, this court will deliver this opinion to the Bar Disciplinary Counsel of the State Bar of Nevada for whatever action it deems appropriate.

IT IS SO ORDERED.

NEIL J. BELLER ecf@njbltd.com, tszostek@njbltd.com

WILLIAM L. MCGIMSEY lawoffices601@lvcoxmail.com

Nancy Allf , Esq.
Gonzalez Saggio & Harlan, LLP
411 E. Bonneville Avenue, #100
Las Vegas, NV 89101

Thomas F. Pitaro, Esq.
Pitaro Law Offices
330 S. Third Street, #860
Las Vegas, NV 89101

NEIL J. BELLER, Esq.
Neil J. Beller, Ltd.
7408 W. Sahara
Las Vegas, NV 89117

JOHN MOMOT, Esq.
520 South 4th Street
Suite 300
Las Vegas, NV 89101

# # #